# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| MARION E. HUNGERFORD,<br>SSN: XXX-XX-9182<br><br>              Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security<br>Administration,<br><br>              Defendant. | CV 14-152-BLG-CSO<br><br><br>**ORDER** |

Plaintiff Marion E. Hungerford ("Hungerford") seeks judicial review of Defendant Commissioner of Social Security's ("Commissioner") denial of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381–1383(f).  *ECF 2.*  Having reviewed the Administrative Record ("AR") and the parties' briefs, the Court will remand this matter to the Commissioner for further proceedings.

## I.     PROCEDURAL BACKGROUND

Hungerford protectively filed her claim for SSI on December 12, 2011, alleging an onset of disability as of December 31, 1995.  *ECF 2* at

2. She alleges she suffers from severe impairments of anxiety disorder, PTSD, bipolar disorder, borderline personality disorder, obesity, lumbar degenerative disc disease, and diabetes mellitus type II (*ECF 2* at 2) as well as gout, left wrist fracture, migraines, incontinence, neuropathy, pancreatitis, abnormal liver and proximal humerus fracture. *AR 23*.

The Social Security Administration ("SSA") denied Hungerford's applications initially and upon reconsideration. *AR 13*. An Administrative Law Judge ("ALJ") conducted a hearing and denied her claims on June 23, 2014. *AR 13–23*. Hungerford sought review of the ALJ's decision by the Appeals Council. *AR 7–8*. The Appeals Council denied Hungerford's request for review, making the ALJ's decision final for purposes of judicial review. *AR 1–5*.

## II. <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Garcia v. Commr. of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (citation omitted); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted).  The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record.  *Treichler v. Commr. of Soc. Security*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.  **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)–(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)–(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved

at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.   If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.   **THE ALJ'S OPINION**

The ALJ followed the five-step sequential evaluation process in considering Hungerford's claim. First, the ALJ found that Hungerford had not engaged in substantial gainful activity since her application date of December 12, 2011. *AR 15.*

At step two, the ALJ found that Hungerford has the following severe impairments: "anxiety disorder, PTSD, bipolar disorder, borderline personality disorder, obesity, lumbar degenerative disc disease, and diabetes mellitus type II." *AR 15*. The ALJ also noted that Hungerford was diagnosed with gout, but found that her symptoms did not persist for 12 months and were well managed with medication and thus determined it was non-severe. *AR 15*. The ALJ found Hungerford's left wrist fracture in 2013 was a non-severe impairment because her symptoms did not persist for 12 months and the fracture healed without complication. *AR 15*. Next, Hungerford was intermittently noted to experience migraines, incontinence, and neuropathy, but the ALJ found that the medical records do not document these symptoms persisting for 12 months and found them to be non-severe. The ALJ noted that Hungerford had an abnormal liver based on a CT scan but that there were no work-related limitations documented based on this finding and concluded it was non-severe. *AR 15*. Finally, the ALJ found a proximal humerus fracture, x-rayed in February 2014, was non-severe because it was in acceptable alignment, no further complications were noted, and there were no indications of

any work-related symptoms that would persist for 12 months, as the fracture would likely heal well within that time.  *AR 15*.

At step three, the ALJ found that Hungerford does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments. *AR 16–18*.

The ALJ found that Hungerford has the residual functional capacity ("RFC") to:

> [P]erform medium work as defined in 20 CFR 416.967(c) except she must be allowed to alternate between sitting, standing, and walking on an occasional basis.  She is limited to only occasional contact with the public.  She is limited to uninvolved work requiring up to 3-4 step tasks, with an allowance for occasional new learning.

*AR 18*.

After the ALJ found that Hungerford has no past relevant work, *AR 21,* he found that Hungerford could perform jobs that exist in significant numbers in the national economy.  *AR 22*.  He considered Hungerford's age on the date the application was filed (58 years old, which is defined as an individual of advanced age), education (at least a high school education and is able to communicate in English), work experience, and RFC.  *AR 21–22*.  Relying on testimony from a

vocational expert ("VE") who also considered the aforementioned factors, the ALJ concluded that Hungerford could perform work in the following representative occupations: vehicle cleaner and hand packager. *AR 22.* Thus, the ALJ determined that Hungerford was not disabled. *AR 22.*

## V. **PARTIES' ARGUMENTS**

Hungerford argues that the ALJ erred by: (1) failing to support his decision with substantial evidence in the record; and (2) ignoring regulations and Ninth Circuit holdings. *ECF 12* at 6. More specifically, Hungerford argues that following her discharge from prison, the ALJ improperly found her not disabled without evidence of improvement in her condition. *Id.* at 18. She argues that the Commissioner failed to present as part of the file the prior hearing and decision necessary to evaluate Hungerford's condition at the time of her imprisonment. *Id.* Additionally, she argues the ALJ erred by: (1) ignoring the objectively established medical conditions and evidence testified to by Hungerford in order to find her not credible; (2) failing to consider as severe all of Hungerford's impairments, including gout, left wrist fracture, migraines, incontinence, neuropathy, pancreatitis, abnormal liver and proximal humerus fracture; (3) ignoring the evaluation by Dr. Peterson

limiting her to light work; and (4) relying on the Vocational Expert because the hypothetical was not supported by the record and did not reflect Hungerford's limitations. *Id.* at 17–29.

In response, the Commissioner argues that the ALJ: (1) was not required to consider medical improvement because Plaintiff's eligibility terminated for a non-medical reason; (2) reasonably determined which impairments were severe within the meaning of the Act; (3) reasonably determined that Plaintiff's allegations of an inability to work were not fully credible; (4) reasonably determined Plaintiff retained the residual functional capacity to perform medium work with limitations; and (5) reasonably relied on vocational expert testimony. *ECF 13.*

In reply, Hungerford argues that the ALJ erred in his credibility determination and improperly ignored objective medical evidence of her symptoms and her testimony of limitations. *ECF 14* at 3. Hungerford argues that although the Defendant asserts that she was malingering, there was no record in the evidence of actual malingering, only of malingering behavior. *Id.* at 14–15.

Finally, without any citation, analysis, or explanation, Hungerford states "[t]he ALJ erred by ignoring lay witness testimony without germane reasons." *ECF 12* at 35. No lay witness testified at

Hungerford's hearing.  *AR 29–89.*  Defendant contends the argument should be waived because Hungerford does not articulate which lay witness was ignored or that there was any particular lay witness.

## VI.   DISCUSSION

The primary issues before the court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the Commissioner's decision is not based on substantial evidence in the record, and contains legal error.

### A.   ALJ's Consideration of Medical Improvement

In 2002, Hungerford had a favorable disability hearing and apparently received benefits until 2005, when she was sentenced to prison.  *Tr. at 33; ECF 12 at 6, 13 at 3-4.*  Hungerford was incarcerated from 2005 to 2011.  *Tr. at 36-37.*  Hungerford now argues that the ALJ erred by making no finding relative to her medical condition at the time Social Security found her disabled and because no health care provider indicated she had any medical improvement subsequent to the date she was last determined to be disabled.  *ECF 12* at 22, 31.

By regulation, a claimant's benefits are suspended upon incarceration and then terminated after 12 continuous months of incarceration. 20 C.F.R. §§ 416.1325, 416.1335. Although suspended benefits may resume upon an eligible recipient's release from custody, the regulations permit no such reinstatement where the claimant's eligibility has been terminated after 12 consecutive months of suspension. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008).

The Administrative Record shows—and Hungerford does not dispute—that she was incarcerated longer than 12 months. *AR 37*. The Administrative Record shows that Hungerford's benefits were terminated. *AR 33*. There is no presumption of continuing disability once benefits have been terminated. *Stubbs-Danielson*, 539 F.3d at 1172. Thus, the ALJ was not required to make a finding of medical improvement and did not err in this regard.

## B. ALJ's Assessment of Hungerford's Credibility

In *Molina v. Astrue*, the Ninth Circuit restated its long-held standard for assessing a claimant's credibility:

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there

is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d 1104, 1112–13 (9th Cir. 2012) (citations and internal quotations omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. *AR 18.* To find the claimant was not entirely credible, absent evidence of malingering, the ALJ must give specific, clear, and convincing reasons. The Court concludes he did so, not stopping at the evidence of malingering behavior by Hungerford.

The ALJ extensively notes the contradictions between Hungerford's testimony concerning the intensity, persistence, and limiting effects of her symptoms and the extensive medical treatment notes, which he found do not support such testimony. He also notes inconsistencies within Hungerford's medical records. For example, when Hungerford first established care after her release from prison, in September 2011, she had injured her toe, and claimed a history of multiple psychiatric complaints, gastrointestinal complaints, and headaches. *AR 19, 441–445*. The ALJ notes, however, that by October 2011, "she was in no acute distress, she had no gastrointestinal symptoms, and her judgment and insight were intact. Thoughts and thought content were normal, she could perform basic math, and her mood and affect were normal." *AR 19,* 457. The ALJ concluded this demonstrated her symptoms were not as severe or persistent as alleged. *AR 19.*

The ALJ also points out that although Hungerford presented for emergent care due to alleged left ankle pain on December 8, 2011, the imaging scans of her left foot and ankle revealed no fracture, some tissue swelling, and evidence of post-surgical changes in the first metatarsal. *AR 19*, *401*. She was diagnosed with an ankle sprain or

strain, but her symptoms did not persist for the 12 month durational requirement. *AR 19, 473*. On December 12, 2011, she had a full range of motion and had no tenderness to palpation, and her mental status exam was unremarkable. *AR 484–485*. One week later, she was diagnosed with gout in her right great toe, but her symptoms were controlled by medication and did not persist. *AR 19*. The ALJ supports this conclusion with the records from January 17, 2012, when she denied experiencing any pain and was cleared to travel from Montana to Gillette, Wyoming. She stated she was stable on all medications and had no acute complaints. *AR 496*. Thus, the ALJ found this evidence further supported the conclusion that her allegations of disabling symptoms near the alleged onset date were not objectively supported. *AR 19*.

In March 2012, Hungerford sought care for a migraine headache alleging she had pain equaling 10 out of a maximum of 10, but she was noted to be in no acute distress, she was alert, and her respiratory rate was normal. *AR 19, 512*. She had normal cardiopulmonary functioning, she was fully alert, her speech was normal, and her mood and affect were normal. She had no motor deficits and her gait was normal. *AR 512*. The ALJ adds that the month prior she sought

emergent care alleging low back pain, but was noted to be pleasant, moved fluidly from her chair to the exam table, was in no acute distress, and had normal mood and affect—despite pain complaints equaling 8 out of a maximum of 10. *AR 19, 520.* The treatment notes indicated she was released with "No restrictions to activity." *AR 521.* The ALJ found these records undermined Hungerford's allegations of disabling mental and physical symptoms. *AR 19.*

On May 11, 2012, Hungerford underwent a consultative physical examination by Dr. Michael Doubek. *AR 19–20.* Dr. Doubek concluded Hungerford's symptoms were unsupported, and he diagnosed malingering behavior based on the lack of objective findings, her lack of truthfulness about her prescriptions, and her refusal to get an x-ray as ordered. *AR 19–20, 531–534.* He opined that she had no symptoms or limitations that affected her ability to perform any physical activity. *AR 20, 534.* In his review of Dr. Doubek's conclusions, the ALJ added that, although Hungerford submitted a statement indicating she thought Dr. Doubek was unprofessional and inappropriate, Hungerford did not refute Dr. Doubek's objective findings. *AR 20, 536.*

On June 19, 2012, Hungerford underwent an x-ray of her lumbar spine that revealed degenerative disc disease at L2-S1, with advanced

disc degeneration at L3-L4.  *AR 20, 548*.  In finding this not disabling, the ALJ cites findings from Dr. Doubek and other providers indicating that Hungerford's lumbar degeneration did not cause severe limitations in her ability to sit, stand, walk, or lift.  *AR 20*.  In November 2012, she was ambulating without assistance, her cardiovascular functioning was normal.  *AR 20, 575*.  Her mood and affect were normal, and she was pleasant.  She made normal eye contact and appeared in no distress.  *AR 20, 575*.

In March 2013, Hungerford sought care for her claims of lower back pain and lower extremity numbness.  *AR 20, 591*.  She was noted to be in no acute distress, there was no alteration in her mental acuity, attention span, or cognitive ability.  Her affect seemed flat, but her thoughts were normal.  *AR 592*.  The ALJ highlighted that although she had some tenderness to palpation in her lumbar spine and some diminished sensation at the L4-S1 dermatones, she ambulated normally, joint range of motion and strength was normal, and she could go from sitting to standing without difficulty.  *AR 20, 592*.  Hungerford continued to receive routine and conservative pain treatment, and in October 2013, she reported that medication was controlling her pain, she was sleeping better, her depression was well managed, and she was

doing adequately well.  *AR 20, 618.*  The ALJ found these records all supported a finding that her symptoms were not as severe or persistent as she alleges.  *AR 20.*

Even with these findings, the ALJ continues to cite other inconsistencies in the record that do not support finding Hungerford's symptoms to be as severe or persistent as alleged.  For example, the ALJ explains that in February 2014, she ambulated without assistance, made normal eye contact, had appropriate hygiene, had a normal mood, was in no respiratory distress, was fully oriented, and had unremarkable neurological findings.  *AR 21.*  Though Hungerford underwent counseling for PTSD, the sessions appeared to offer only conservative and routine treatment and the records did not indicate any work-related symptoms or limitations.  *AR 20.*

Based on all of these records, and the record as a whole, the ALJ found that Hungerford was not entirely credible.  *AR 18–21.*  This Court finds that the ALJ provided clear and convincing reasons for finding Hungerford to be not entirely credible in her statements concerning the intensity, persistence, and limiting effects of her symptoms.

## C. ALJ's Assessment of Hungerford's RFC

In evaluating Hungerford's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review th[at] decision[ ] intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted). In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted). But a court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2003). In deciding whether to accept or reject opinions of doctors, the ALJ "must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ found Hungerford has the RFC to perform medium work with limitations. *AR 18*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. *20 C.F.R. § 416.967 (c)*. The regulations require that in

determining RFC, the ALJ must consider the limiting effects of all impairments even those that are not severe *(20 C.F.R. § 416.945(e))*, and the ALJ has the responsibility for developing the medical record. *20 C.F.R. § 416.945(a)(3).* But nowhere did the ALJ explain what substantial evidence supported his specific conclusion that Hungerford could perform medium work. And, if Hungerford could only perform sedentary or light work, if appears that the regulations may require a finding that she is disabled. *See 20 C.F.R. § 416.968(d)(4).*

The ALJ discussed the physical examination administered in May 2012 by Dr. Michael Doubek. As noted, Dr. Doubek diagnosed malingering behavior, and concluded that Hungerford could "sit, stand, and walk normally." *Tr. at 20, 533.* He continued: "There is no restriction of seeing, hearing, talking, pushing, pulling, stooping, sitting, standing, walking, or going up or down stairs." *Id. at 534.* But Dr. Doubek did not opine that Hungerford could do medium work. He concluded instead that "light work is expected to be easily accomplished." The ALJ did not explain his basis for concluding that Hungerford could perform medium work, even though the consultative examiner concluded that she could perform light work.

In December 2013, Hungerford underwent a consultative exam for the State agency. The exam was conducted by Dr. Dale Peterson, a non-treating consultative examiner, who concluded that Hungerford was limited to sedentary work activity. *TR. at 21.* Dr. Peterson concluded that Hungerford could never lift more than 11 pounds and could only occasionally lift up to 10 pounds. *Tr. at 631.* This finding is consistent with Hungerford's testimony that, while she was in prison, she was restricted to lifting less than 15 pounds. *Tr. at 38.* If these findings were accepted, Hungerford could not perform medium work. The ALJ did not specifically explain why he rejected Dr. Peterson's lifting restrictions.

The ALJ cited no finding in the record that Hungerford could perform the lifting requirements of medium work. The ALJ apparently rejected, without explanation, the findings of Dr. Peterson and Dr. Doubek in this regard, and concluded Hungerford could perform a higher RFC than provided for by any medical evidence cited in his decision. Although his RFC was consistent with the State Agency findings, *AR 97, 109*, the ALJ did not rely on that evidence in concluding Hungerford could perform medium work with limitations. Accordingly, the Court concludes the ALJ erred by not supporting his

decision with substantial evidence in the record. In a similar case, *Thompson v. Astrue*, 2010 WL 3239342 (D. Ore. 2010), the court concluded that the ALJ "cited no medical evidence of record or examples of plaintiff's daily activities to support the finding that she can perform medium work" and "[a]bsent citation to specific evidence in the record supporting the ability to perform medium [work], the ALJ's disability determination cannot be upheld." *Id. * 1.*

## D.   ALJ's Consideration of Vocational Expert's Opinion

If a claimant shows that he or she cannot return to previous work, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* If the assumptions in the hypothetical are not supported by the record, then the VE's opinion that the claimant has a residual working capacity has no evidentiary value. *Id.*

Hungerford argues that the ALJ erred in failing to include in his hypothetical question to the vocational expert all of Hungerford's limitations. *ECF 12 at 35.* As discussed above, the Court has already determined that the ALJ failed to base his decision on substantial

evidence in the record. The hypothetical posed to the VE included an RFC of medium work with limitations. But because the hypothetical is not supported by substantial evidence in the record, it cannot be relied upon by the ALJ. *Hunt v.* Colvin, 954 F.Supp.2d 1181, 1195 (W.D. Wash. 2013). Accordingly, the Court finds that the ALJ did not meet his burden at step five and could not rely on the testimony of the VE.

### E.    Whether to Remand or Reverse

The decision whether to remand for further proceedings or for an immediate award of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an award of benefits is appropriate if there is no useful purpose to be served by further proceedings or if the record is fully developed. *Strauss v. Commissioner*, 635 F.3d 1135, 1138–39 (9th Cir. 2011). The Court should remand for an award of benefits if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178.

Based on the errors made by the ALJ, the Court concludes that further proceedings would be useful. It is not clear from the record that the ALJ would be required to find the claimant disabled if he properly credited all evidence and considered the entirety of the record. He did not provide substantial evidence in his decision, but that is not to say his decision could not have been supported by further proceedings or from other evidence in the record.

## VII. <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that Hungerford's motion for summary judgment (*ECF 12*) is GRANTED and the Commissioner's decision denying SSI is REMANDED for further proceedings consistent with this opinion.

The Clerk of Court shall enter Judgment accordingly and close this case.

DATED this 27th day of August, 2015.

*/s/ Carolyn S. Ostby*
United States Magistrate Judge